Roy M. Schoenbrod and Hyland Builders Corporation, an Illinois Corporation, Plaintiffs-Appellants, v. Herbert M. Rosenthal, Dunbar Builders Corporation, an Illinois Corporation, and La Salle National Bank as Trustee Under Trusts Nos. 23354 and 24445, Defendants-Appellees.

Gen. No. 48,527.

First District, Third Division.

May 3, 1962.

Rehearing denied June 6, 1962.

112

Howard G. Joseph, of Chicago, for appellants.

Dixon, Morse, Knouff & Holmes, of Chicago (Marshall Patner, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiffs, Roy M. Schoenbrod and Hyland Builders Corporation, appeal from a decree dismissing, with prejudice, their amended complaint. The principal issues presented are whether the plaintiffs are barred from maintaining their suit by the doctrines of res judicata and laches.

Schoenbrod and the defendant, Herbert M. Rosenthal, were equal owners of the Hyland Builders Corporation and four affiliated companies. In April 1955 they agreed to terminate their association by one or the other selling his stock to the corporations. The liquidation agreement provided that on April 18, 1955, Rosenthal would deposit in escrow a written statement of the price at which his or Schoenbrod's 50% interest could be bought or sold, and that Schoenbrod would have the election, to be exercised on April 19th, of either selling his stock or of buying Rosenthal's at the stated price.

Rosenthal deposited his statement and its terms were, (a) for the immediate transfer of $90,000 worth of the corporations' contract paper; (b) for the payment of $25,000 in cash on or before July 18, 1955, and, (c) for a two-year employment contract to the selling party for an additional $26,000 payable at $250 a week, starting on May 1, 1955.

Schoenbrod elected to purchase Rosenthal's interest. He and the corporations made the payments as agreed but stopped paying on the employment contract, which had been signed April 30, 1955, after having paid $10,250. In May 1956 Rosenthal sued for the unpaid balance of $15,750. He received a judgment for that amount and Schoenbrod appealed to the Appellate Court which affirmed the judgment. Rosenthal v. Hyland Builders Corp., 25 Ill App2d 229, 166 NE2d 463 (1960).

In June 1960 Schoenbrod brought the present suit against Rosenthal and Ben Silberman and Gilbert H. Hennessy, Jr., who were the accountant and the attorney, respectively, of the Hyland Builders Corporation at the time of the liquidation agreement. He alleged that in June 1955 he retained a new accountant and learned for the first time that the net worth of the corporations was $140,000, and not $280,000 as represented by the defendants upon whom he relied. He charged that they conspired to induce him to transfer all of the assets of the corporations to Rosenthal and that, as a result, he suffered damages of $142,000. He prayed for an accounting, for reformation of the liquidation agreement and for punitive damages.

After the three defendants had answered, an amended complaint was filed which adopted the averments of the original complaint and which added Dunbar Builders Corporation and the La Salle National Bank as defendants. It was alleged that Rosenthal converted the money he received from the plaintiffs

115

into real estate owned by him and the Dunbar Company and that the La Salle bank held title, as trustee, for some of this property. The imposition of a constructive trust upon the defendants' property, the appointment of a receiver for it, an injunction against encumbering it and an injunction against enforcing the judgment of $15,750 were prayed for, in addition to the relief sought in the original complaint.

All the defendants joined in a motion to dismiss which was predicated on the grounds that the subject matter of the amended complaint was or could have been adjudicated in the prior litigation between Rosenthal and Schoenbrod, and that the complaint was barred by *laches*. The chancellor sustained the motion as to Rosenthal, the Dunbar Company and the La Salle National Bank, the latter two because of being in privity with Rosenthal, and denied it as to the defendants Silberman and Hennessy. He further found that there was no just reason for delaying the enforcement of or the appeal from his decree.

The initial question to be determined is whether the first litigation over the employment contract is res judicata of the present suit. The doctrine of res judicata is that a cause of action once adjudicated by a court of competent jurisdiction cannot be tried again between the same parties or their privies in new proceedings, before the same or a different tribunal, except in an action to set aside or review the prior adjudication. The People v. Kidd, 398 Ill 405, 75 NE2d 851; City of Chicago v. Partridge, 248 Ill 442, 94 NE 115. The doctrine arises where the prior adjudication is relied upon as a conclusive bar to the entire new action. There are three essentials to its application: the cause of action, the parties or their privies, and the subject matter must be the same in both cases. Ray Schools-Chicago-Inc. v. Cummins, 12 Ill2d 376, 146 NE2d 42. Not only all the matters which

116

were litigated in the first cause of action, but also all those which could or might have been presented to support or defeat the claim are regarded as concluded by the prior judgment. Seno v. Franke, 16 Ill App2d 39, 147 NE2d 469.

 Another rule concerning former adjudication, which rests on the same fundamental principle, is generally called estoppel by verdict. City of Elmhurst v. Kegerreis, 392 Ill 195, 64 NE2d 450. Occasionally, it has been termed collateral estoppel (Cohen v. Schlossberg, 17 Ill App2d 320, 150 NE2d 218) a term which might advantageously be used in all cases. It is broad enough to cover both law and equity, and in law it would apply equally well to cases tried with or without a jury. Collateral estoppel arises where the second cause of action differs from the first but is between the same parties or their privies. The judgment in the prior action then operates as a bar to those points or issues raised or decided in the first case. Boddiker v. McPartlin, 379 Ill 567, 41 NE2d 756; Hicks v. Hicks, 20 Ill App2d 139, 155 NE2d 355; Cheevers v. Stone, 10 Ill App2d 39, 134 NE2d 32. Under collateral estoppel only the matters which were litigated in the first cause of action and not those which might have been, are deemed concluded. Chicago Historical Society v. Paschen, 9 Ill2d 378, 137 NE2d 832.

 These rules were applied by the Supreme Court in a case similar to the present one, Harding Co. v. Harding, 352 Ill 417, 186 NE 152. The Harding Company had been formed to take over the business of Charles E. Harding. In the agreement he assigned his name and assets to the company. He received an employment contract in which he agreed not to participate in any like business for two years. A year and a half later the company sought to enjoin him from doing business under his name. The injunction was issued and the company was given a judgment for the

costs of the suit. Later the company brought a creditor's bill to satisfy the judgment and it also asked for an accounting to recover money Harding owed the company. Harding filed a cross-bill. He named as defendants those who controlled the company, charging that they had used duress and fraud to get him to make the agreement under which the company took over his business. He asked that the agreement be set aside, for the declaration of a constructive trust and for an accounting. The defendants' answer asserted that all the matters concerning the formation of the company had been adjudicated in the injunction proceeding. The trial court held for Harding. The company and the cross-defendants appealed to the Appellate Court. One of the grounds urged on appeal was that it was the obligation of Harding to have made the defense of fraud in the injunction suit, and that having failed to do so he should not be permitted to maintain a separate suit for such relief. The Appellate Court concurred in this view and held that the issue of fraud was barred by res judicata. (Harding Co. v. Harding, 264 Ill App 121.) The Supreme Court disagreed with the Appellate Court's application of the doctrine of res judicata. The court noted that although the full agreement had been set forth in the bill in the injunction suit, Harding's answer did not question its validity and that the only issue between the parties was the construction of the agreement as it pertained to Harding's employment and to his engaging in the same line of business under his own name. The court said:

"If the contract had been invalid for fraud or duress in its origin that issue might well have been raised and decided in that [injunction] suit, but no such question was raised in the pleadings, and naturally no such question was mentioned, considered or determined in the decree."

118

The court went on to say that the cause of action in the injunction suit was not the same as the cause of action set out in the cross-bill; that if they were the same, the rule to be applied was that the decree or judgment in the first case was conclusive not only of all questions litigated, but of all questions which might have been litigated or determined; but since the causes of action were not the same, the correct rule to be applied was that the first decree barred only the question or questions common to both cases which were actually litigated and determined in the first case.

The distinctions made in the Harding case are equally pertinent to the present case. The first suit was a dispute over the services rendered by Rosenthal; the second suit is an attempt to reform the liquidation agreement, for an accounting and for other relief. Since the causes of action are not the same, it is clear that res judicata has no application.

 One of the defenses made by Schoenbrod to the employment contract was that it was without consideration. This defense was met by showing that the employment contract was provided for in the liquidation agreement and that the latter was consideration for the former. When Schoenbrod raised this defense in the first suit he had an opportunity to challenge the validity of the entire liquidation agreement. If the liquidation agreement was tainted by fraud, as is now alleged, the employment contract was also, for, as pointed out by the Appellate Court (25 Ill App2d 229, 166 NE2d 463) and as acknowledged by the plaintiffs in their amended complaint, the employment contract was "part and parcel" of the liquidation agreement. However, the fact that Schoenbrod had the opportunity to present this broader defense is of no significance in deciding if there is collateral estoppel. The question is whether the subject matter of the amended complaint was adjudicated in the first case, not wheth-

119

er it could have been. The pleadings are of consequence in ascertaining if the issue was involved but the record is of greater importance. The record before us does not reflect either the consideration or the determination of the present controversy. Since it was not adjudicated in the prior action, the instant suit is not barred by collateral estoppel.

While we disagree with the chancellor that this suit is barred by prior adjudication, we agree that it is barred by *laches*. *Laches* is the neglect to assert a right or claim which, taken together with lapse of time and circumstances causing prejudice to the opposite party, will bar a complaint in equity. Freymark v. Handke, 415 Ill 360, 114 NE2d 349; Curtis v. Curtis, 398 Ill 442, 75 NE2d 881. In cases based on fraud far greater emphasis is placed on the delay in asserting the claim than on a change of circumstances, for an unreasonable lapse of time between discovering the supposed fraud and bringing the suit is of itself prejudicial to the party charged with fraud. The very nature of the charge calls for prompt action. An unexplained delay raises an immediate doubt as to a plaintiff's right to ask the intervention of a court of equity which is an appeal to justice and good conscience. One who requests the help of a court of equity must be of good faith and must be diligent in prosecuting his claim. The natural reaction of a person who has been defrauded is to cry out in protest and to move with alacrity in seeking redress. When he does neither, his claim and his motives are suspect.

It has been uniformly held in Illinois that anyone seeking to rescind a transaction on the ground of fraud must elect to do so promptly after learning of the fraud, must announce his purpose and must adhere to it. An unexplained delay of less than 11 months was called *laches* in Kanter v. Ksander, 344 Ill 408, 176 NE 289. Where no facts were shown to excuse the

120

delay, a lapse of 18 months was held to be too long in Huiller v. Ryan, 306 Ill 88, 137 NE 484. Twenty-five months between obtaining knowledge of the facts and filing suit was held unreasonable in Foston v. Swanson, 306 Ill 518, 138 NE 119. A period of three years was called an extraordinary delay in Prather v. Hill, 36 Ill 402. A delay of three years and ten months was said to be inexecusable *laches* in McKey v. McKean, 384 Ill 112, 51 NE2d 189. A lapse of over four years was held to be in contravention of equitable principles in Mock v. Higgins, 3 Ill App2d 281, 121 NE2d 865.

The amended complaint states that Schoenbrod learned of the fraud on June 18, 1955, about two months after he chose to buy Rosenthal's interest rather than to sell his own at the designated price. His present complaint was not brought until June 15, 1960, almost five years later, and no explanation is offered for the long delay. After discovering the fraud, he continued to pay Rosenthal $250 a week up to February 18, 1956; he defended Rosenthal's suit for the balance due under the employment contract and he asserted in his defense that the employment contract lacked consideration. Yet he did not, in support of this affirmative defense, make any claim that the liquidation agreement was invalid because of fraudulent misrepresentations, a claim which, if true, would have been a complete defense to the employment contract. In addition to this, the amended complaint states that it was necessary to bring into the case the defendants, Dunbar Builders Corporation and La Salle National Bank, because in the intervening years Rosenthal had invested the money he obtained from the liquidation settlement in properties held under the names of these defendants. Rosenthal has suffered a change of position, made without knowledge that a charge of fraud was to be brought against him; indeed, he could well have thought that all disputes be-

tween himself and Schoenbrod had been resolved as a result of his suit for enforcement of the employment contract.

The question of *laches* must be considered in the light of the plaintiff's own allegations. If a complaint in equity shows *laches* on its face and if it does not plead good and sufficient reason for not having prosecuted the cause at an earlier date, it can be attacked by a motion to dismiss which specifically points out the defect. Hartsman v. Abboreno, 18 Ill2d 467, 165 NE2d 338; Holland v. Richards, 4 Ill2d 570, 123 NE2d 731.

Affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.